## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACK SOBERICK,** | : | **No. 3:04cv1738** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF LANSFORD,** | : | |
| **JAMES STRAUSS, MAYOR GEORGE** | : | |
| **KRAJNAK, POLICE OFFICER** | : | |
| **JEREMY SOMMERS, ROBERT** | : | |
| **GAUGHAN, RICHARD GIANTESANO,** | : | |
| **CHARLES REPINEC, MARGARET** | : | |
| **HOROWSKI, BARRY MORAN,** | : | |
| **and JOSEPH NIHEN,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

_____Before the court is Defendant Barry Moran's motion for summary judgment

(Doc. 82).  Having been fully briefed and argued, the case is ripe for disposition.

**Background**

        This case arises from plaintiff's employment as a police officer for the Borough

of Lansford.  He has been employed as a full-time officer since 1996, and had

worked as a part-time officer from 1986 until that time.  (Defendant's Statement of

Material Facts as to Which There is No Genuine Issue to Be Tried (Doc. 89)

(hereinafter "Defendant's Statement") at ¶ 2).  On the night of June 29-30, 2001,

James Zurn, who worked for the CNS railroad in Jim Thorpe, Pa, was stopped at a

DUI checkpoint at the border of the Borough of Lansford and the Borough of

Coaldale.  (<u>Id.</u> at ¶¶ 4, 11).  Zurn had been drinking, and police later concluded that his blood alcohol had exceeded the legal limit.  (<u>Id.</u> at ¶ 11).  Police nevertheless allowed Zurn to drive home from the scene.  (<u>Id.</u>).  The parties dispute plaintiff's exact role at the checkpoint.  He was the ranking police officer on duty that night, and defendant claims Soberick was at the checkpoint when the incident occurred. (<u>Id.</u>).  Plaintiff contends that he was on duty as a general supervisor and not specifically assigned to the checkpoint. (Plaintiff's Answer to Defendant Barry Moran's Statement of Material Facts as to Which There is no Genuine Issue to be Tried (Doc. 89) (hereinafter "Plaintiff's Statement) at ¶ 11).

Sometime after he was released, Zurn gave Jeffrey Wainright, another officer on the scene $3,500 in cash.  (Defendant's Statement at ¶ 11).  The parties dispute whether plaintiff was present at this cash hand-over.  (Plaintiff's Statement at ¶ 11). The money was supposedly to be used to buy weapons for the police department. (Defendant's Statement at ¶ 11).  That money was deposited in the Borough's general fund account, but eventually returned to Zurn when Borough officials concluded that the money was a bribe.  (<u>Id.</u>).

Defendant Barry Moran is a Special Agent with the Pennsylvania Attorney General's Bureau of Criminal Investigation.  (<u>Id.</u> at ¶ 5).  He has worked there since 1979.  (<u>Id.</u>).  Moran has been assigned to several offices, but has worked at the Wilkes-Barre Office since 1999.  (<u>Id.</u>).  Before working for the Commonwealth, Moran worked five years for the FBI.  (<u>Id.</u> at ¶ 6).  He has a BA in criminal justice

from Mansfield University and also has other training in criminal investigation, including training on Fourth Amendment and search warrant procedures.  (Id.).  During his years as an investigator, Moran has applied for hundreds of arrest and search warrants.  (Id. at ¶ 7).  Moran testified in his deposition that it is his practice not to rely on investigations of local officials before seeking a warrant.  (Id.).  Instead, his office conducts the investigations that lead him to seek warrants.  (Id.).  Plaintiff contends that in this case he relied on an investigation conducted by plaintiff's political enemies in the Borough, who acted out of their animus against him. (Plaintiff's Statement at ¶ 7).

On June 4, 2003, Soberick, Wainright and Zurn were arrested on charges of bribery.  (Defendant's Statement at ¶ 8).  Wainright and Soberick were also charged with criminal conspiracy.  (Id.).  District Judge Casimir T. Kosciolek reviewed the affidavit before signing and issuing the arrest warrant. (Id. at ¶ 9).  The facts upon which the affidavit of probable cause was based were the result of an investigation that began in the Attorney General's Office in July 2002 and continued until June 2003.  (Id. at ¶ 10).  Plaintiff contends that the investigation concluded before June 2003, and that plaintiff's arrest came only after several of the defendants in this case picketed the Attorney General's Office.  That office took jurisdiction because of a conflict of interest in the Carbon County District Attorney's office.  (Id.).  Plaintiff contends that the investigation took place in part because political officials in Lansford put pressure on the Attorney General's office to undertake it.  (Plaintiff's

Statement at ¶ 10).  Some of the defendants in the case even picketed that office to urge investigation.  (Id.).

According to Agent Moran, the investigation included interviews of more than 20 individuals, including Zurn, Wainright and Soberick.  (Defendant's Statement at ¶ 12).  Investigators also interviewed other members of the Lansford police force, as well as officers involved in the checkpoint from other jurisdictions.  (Id.).  They also spoke with George Kraznak, the Lansford mayor, Mary Kruczek, the Borough Secretary, Carbon County District Attorny Gary Dobias and Assistant District Attorney Michael Greek.  (Id.).  Moran also used numerous documents, including the written statements of plaintiff, in completing his investigation.  (Id. at ¶ 14).  Moran knew none of the individuals he interviewed before the investigation began.  (Id. at ¶ 16).  During the investigation, Moran operated under the supervision of a Senior Deputy Attorney General and prepared frequent progress reports for this supervisor.  (Id. at ¶ 15).  This Deptuy, Anthony Forray, made the recommendation that plaintiff be arrested and charged.  (Id.).  He reviewed the affidavit of probable cause.  (Id.).

Moran submitted an affidavit of probable cause in support of the warrant.  (See Attachment A to Defendant's Statement of Facts (Doc. 84-2)).  He filed the affidavit on June 2, 2003.  (Id.).  The affidavit relates the course of Moran's investigation and identifies the persons he interviewed.  (Id. at ¶ 3).  Moran informed the court of the traffic stop, Zurn's release, his contacts with Wainright and plaintiff, and his payment to the two of $3,500 in cash.  (Id. at ¶ 4).  Moran related that

Jeremy Sommers, an officer on the scene, had told him that plaintiff was present when police stopped Zurn. (Id. at ¶ 6). Sommers recalled that Zurn asked several officers how he could avoid arrest. (Id.). He also heard Soberick and Wainright discussing the need for new weapons for the department, and that they had to wait for lab results before deciding how to deal with Zurn. (Id.). Eventually, however, Soberick allowed Zurn to leave the scene. (Id.). After that event, Sommers reported that he saw Zurn in Lansford several times, attempting to contact Wainwright. (Id.). He saw the two meeting on at least three occasions. (Id.). Wainright later showed Sommers a gas gun, telling him that it had been procured through Zurn. (Id.).

Moran also swore that Zurn told him that after he was stopped he explained to Wainright that he hoped to avoid a DUI arrest because it might affect his ability to operate the railroad. (Id. at ¶ 7). He remembered that either Soberick or Wainright released him on that night. (Id.). Six individuals had their blood tested that night. (Id. at ¶ 10). Five provided blood sufficient for testing. (Id.). Those five all had blood alcohol beyond the legal limit. (Id.). Zurn was the only person not charged with DUI. (Id.). After his release, Zurn had several meetings with Wainright in an attempt to have his charges dropped, and he offered to buy the department material to achieve that end. (Id. at ¶ 7). Eventually, he and Wainright worked out a deal to have Zurn pay $3,500. (Id.). In September 2001, Zurn went to the police department and turned the money over to Wainright and Soberick. (Id.). Soberick took the money, put it in a cash box, and told Wainright to give Soberick what he

5

believed to be his blood test results. (Id.). Eventually, Zurn got his money back.

(Id.). Wainright called him and told him the Borough was trying to punish him for

taking Zurn's money. (Id.). The affidavit relates reports from various individuals

who observed Wainright's actions in obtaining money from Zurn and procuring the

gun for the department. (See, e.g., Id. at ¶¶ 6, 8, 9, 11, 12, 13). The affidavit also

records Soberick's denials of involvement in any bribery scheme. (Id. at 14).

A district justice dismissed the charges against Soberick on August 14, 2003,

after a preliminary hearing. (Defendant's Statement at ¶ 8). After this ruling, plaintiff

brought a complaint in the Carbon County Court of Common Pleas. (See Doc. 1).

The complaint, brought against Sommers, the police chief, the mayor and various

Borough Council Members, as well as Agent Moran, sought relief for violation of

plaintiff's free speech, equal protection, and associational rights. The complaint also

alleged a conspiracy to violate plaintiff's rights, failure to train and state-law claims of

defamation and malicious prosecution. Defendants removed the case to this court

on August 6, 2004. After the court granted in part and denied in part defendants'

motion to dismiss, the defendants answered the complaint. Discovery ensued, and

the court had to intervene several times to coerce the plaintiff into complying with

defendants' discovery requests. Finally, however, Defendant Moran filed the instant

motion for summary judgment on March 24, 2008. (See Doc. 82). The parties then

briefed the motion, bringing the case to its present posture.

**Jurisdicion**

6

As the case is brought pursuant to 42 U.S.C. § 1983, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Standard of Review**

The case is before the court on defendant's' motion for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

 In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw

Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party. Anderson, 477

U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit

under the governing law.  Id.  Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v.

Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

The only issue here before the court is whether summary judgment should be

granted Defendant Moran on plaintiff's claim that he was arrested without probable

cause in violation of his right be free of unlawful search and seizure under the Fourth

Amendment.  The Third Circuit Court of Appeals has held that "the Fourth

Amendment prohibits a police officer from arresting a citizen except upon probable

cause."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).  Such

probable cause "requires more than mere suspicion; however it does not require that

the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  Id. at

482-83.  Such probable cause "exists when the facts and circumstances within the

arresting officer's knowledge are sufficient in themselves to warrant a reasonable

person to believe that an offense has been or is being committed by the person to be

arrested."  Id. at 483.  "[A] district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788-89 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).  An officer who arrests without probable cause can be liable to the arrestee for damages.  Id.

Here, the plaintiff's arrest came after a magistrate issued an arrest warrant based on Defendant Moran's affidavit.  The parties do not dispute that on its face the affidavit provides probable cause for issuing a warrant.  Still, courts have found that "an arrest warrant issued by a magistrate judge does not, in itself, shelter an officer from liability for false arrest."  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000).  A plaintiff can nevertheless prevail on a Section 1983 claim for false arrest by showing "by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or material, or necessary, to the finding of probable cause."  Id. at 786-87 (quoting Sherwood, 113 F.3d at 399).  The statements or omissions in question must also be material to the issuance of the warrant to create liability.  "To determine the materiality of the misstatements and omissions, we exercise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause."  Wilson, 212

F.3d at 789.

Here, plaintiff contends that Defendant Moran omitted material facts from the

warrant.  Affidavits must contain materially relevant information, since "a police

officer cannot make unilateral decisions about the materiality of information, or, after

satisfying him- or herself that probable cause exists, merely inform the magistrate or

judge of inculpatory evidence." Id. at 787.  Not all omissions, of course, expose an

officer to potential liability:  "omissions are made with reckless disregard if an officer

withholds a fact in his ken that 'any reasonable person would have known that this

was the kind of thing the judge would wish to know.'" Id. at 788 (quoting United

States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)).  Still, to create liability, those

omissions must be material; the plaintiff must show "by a preponderance of the

evidence that probable cause does not exist under the corrected affidavit." United

States v. Yosuf, 461 F.3d 374, 383 (3d Cir. 2006).

Plaintiff points to six omissions in that affidavit which he claims were material:

> (1) Soberick could not arrest Zurn because he never observed him in
> control of a motor vehicle;
> (2) he never accepted money from Zurn;
> (3) Soberick followed Borough regulations in reporting the money and
> securing it after Zurn brought the money to the department;
> (4) he followed the Borough Solicitor's instructions in handling the funds;
> (5) Zurn's money was discussed openly by the borough council,
> which accepted the money and deposited it in the general fund; and
> (6) the public actions were at the advice and consent of the Borough's
> solictor.

Taken together, plaintiff insists, a magistrate reviewing the affidavit would have to

conclude that plaintiff lacked the *mens rea* necessary for a charge of bribery or

10

conspiracy.

The court concludes that "correcting" the affidavit by adding these omissions to it would not eliminate the probable cause that existed in the warrant.  The criminal complaint charged plaintiff with two crimes, bribery in official and political matters, 18 PA. C.S. § 4701, and criminal conspiracy, 18 Pa. C.S. § 903.  A person is guilty of bribery in official and political matters "if he offers, confers, or agrees to confer upon another, or solicits, accepts or agrees to accept from another: (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, voter or other exercise of discretion as a public servant, party official or voter by the recipient."  18 PA. C.S. § 4701(a)(1); see, e.g., Commonwealth v. Johnson, 910 A.2d 80, 84 (Pa. Super. Ct. 2006) (holding that defendant could be convicted of bribery if he "exercised his discretion as a police officer in order to procure for free a service that would normally cost money.").  A person is guilty of conspiracy "if with the intent of promoting or facilitating [a crime's] commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime."  18 PA. C.S. § 903(a)(1); see, e.g., Commonwealth v. Murphy, 795 A.2d 1025, 1037-38 (Pa. Super. Ct. 2002) (holding that "'to sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy.'")

11

(quoting <u>Commonwealth v. Hennigan</u>, 753 A.2d 245, 253 (Pa. Super. Ct. 2000)).

The question for the court, then, is whether adding these omitted facts would mean that no reasonable person could conclude that plaintiff had "solicit[ed], accept[ed] or agree[d] to accept from another: (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, voter or other exercise of discretion as a public servant, party official or voter by the recipient."  18 Pa.C.S. § 4701(a)(1); <u>see</u> <u>Merkle</u>, 211 F.3d at 788 (defining probable cause as occurring when "the facts and circumstances within [the affiant's] knowledge are sufficient in themselves to warrant a reasonable person that an offense has been or is being committed by the person to be arrested.'") (quoting <u>Orsatti</u>, 71 F.3d at 482).[1]  The court will examine each of the proposed additions to determine whether including them would show by a preponderance of the evidence that probable cause was not present in the affidavit.

First, plaintiff contends that the affidavit should have contained reference to the fact that he did not have the ability to arrest Zurn because he had never

---

[1]Because the court finds this question dispositive in relation to the bribery charge, no discussion of probable cause in relation to the conspiracy charge is necessary.  The court notes, however, that the affidavit of probable cause contains information by which a reasonable person could conclude that plaintiff worked together with Wainright to solicit and process the bribe from Zurn.  The affidavit, after all, contains information that indicates that plaintiff mentioned the possibility of paying a bribe to avoid the DUI charge to Zurn, that Wainright then worked out the terms of the bribe and that plaintiff processed the bribe after Zurn received it.  Though a court ultimately concluded that the evidence did not support these claims, the affidavit of probable cause, even with additional information about the ultimate destination of the funds and plaintiff's role at the scene of the arrest, contains sufficient information for issuance of the warrant.

observed him in control of a motor vehicle.  Because plaintiff did not have grounds to

arrest Zurn, he had nothing to exchange for the bribe.  The court does not find this

fact relevant to probable cause, and including the affidavit would not have changed

the magistrate's decision on the warrant.  The question here is not whether plaintiff

had sufficient grounds to arrest Zurn, but whether he solicited a bribe from Zurn after

Zurn came to believe that plaintiff could place him under arrest.[2]  Plaintiff appears to

read the Pennsylvania bribery statute far too narrowly.  In Commonwealth v.

Goldbard, for instance, the Pennsylvania Superior Court found that a tax agent could

be found guilty of bribery for receiving $8,000 in exchange for agreeing to reduce a

coal company's tax liability on a recently purchased airplane by one-half even if the

Commonwealth failed to present evidence that the coal company had any tax liability

at all.  Commonwealth v. Goldbard, 419 A.2d 161, 163 (Pa. Super. Ct. 1981).  The

court found that defendant had accepted a pecuniary benefit in exchange for an

agreement to violate his public duty.  Id.  The court concluded that "[t]he legal duty

which [defendant] had was his legal duty to investigate possible tax liabilities due the

Commonwealth of Pennsylvania, his duty not to agree to destroy records of the

Commonwealth, and his duty to advise taxpayers to take the appropriate lawful

actions regarding their tax liability."  Id. at 163-64.

---

[2]We note as well that the allegation in the affidavit of probable cause was that plaintiff was on the scene of the arrest and allowed Zurn to leave it after Zurn sought a way out of the ticket.  Letting Zurn leave the scene, whether plaintiff actually caused his arrest or not, represents an decision not to act, and is covered by the bribery statute.

The situation is similar here; though plaintiff may not have had legal authority to arrest Zurn, the allegations in the corrected affidavit nevertheless would contain information that plaintiff used Zurn's sense of impending prosecution to obtain a pecuniary benefit for the department.  Indeed, the court fails to see why the situation described in the corrected affidavit–that plaintiff knew he could not arrest Zurn but solicited a bribe in order not to do so–would make plaintiff's behavior any less worthy of sanction.  As with the tax agent, a police officer would surely violate his duty to enforce the laws fairly and equitably if he used the threat of an arrest he knew he could not procure to obtain funds for police department resources.  Probable cause does not disappear by "correcting" the affidavit with this information.

Next, plaintiff argues that the affidavit should have included a statement that he never took any money from Zurn.  The affidavit contains a summary statement that alleges that Zurn "gave to Officer Wainright and Officer Jack Soberick $3,500 in cash."  (Doc. 84-2 at ¶ 4).  The affidavit also summarizes the testimony of James Zurn, which includes a declaration that in "September 2001, Zurn traveled to the Lansford Police Department and turned over [$3,500] to Wainright and Soberick." (Id. at ¶ 7).  Police Chief Jim Strauss informed Moran that plaintiff in early 2002 showed him a gray lock-box in the city's evidence room.  (Id. at ¶ 9).  Strauss claimed that plaintiff told him that the box contained $3,500 provided by Zurn.  (Id.). Moran's affidavit also included Soberick's denial that he had been paid the money directly by Zurn and that he had allowed Zurn to leave the scene or had done

14

anything improper with the money.  (Id. at ¶ 15).  The affidavit relates, however that Soberick was present when Zurn handed the money to Wainright.  (Id.).  Soberick also admitted that he placed the money in a lock box.  (Id.).

The court finds that "correcting" the affidavit to add the statement that plaintiff never took any money from Zurn would not have eliminated the probable cause stated in the affidavit.  The affidavit reports that certain witnesses had accused Soberick of receiving the money from Zurn.  Plaintiff does not deny that the individuals in question made those statements to Moran.  He also admits to being in possession of the money that the affidavit indicates Zurn paid to the department, whether as a "donation" or a bribe.  Moran apparently came to the conclusion that evidence indicated that Soberick had actually received the money, and stated so. The actual evidence Moran presented, however, was more ambiguous, and indicated that Soberick may not have actually taken immediate possession when Zurn turned over the $3,500.[3]  At the same time, a judge reviewing the evidence of those statements–which plaintiff does not dispute were made–could reasonably conclude that probable cause existed to conclude that plaintiff received the payment, if not directly from Zurn.  In any case, even if the court were to conclude that the inclusion of an unambiguous statement that plaintiff never received money directly

---

[3]Indeed, the court is reluctant to conclude that adding an unequivocal statement that plaintiff never took money from Zurn would actually "correct" the affidavit.  Moran had no evidence–not even from the plaintiff–that he never took money that came from Zurn, whether Zurn placed the money directly in his hand or not.

from Zurn was warranted, such a statement would not have eliminated the probable cause for the warrant's conspiracy count.  Evidence in the affidavit reasonably indicates that plaintiff was involved in the scheme to obtain money from Zurn; witnesses indicated that he participated with Wainright in the decision to let Zurn leave the scene, discussed with Wainright uses for the money Zurn was to pay, and took charge of processing the money Wainright obtained.

Plaintiff also points to the steps that he took after receiving money from Zurn as evidence that should have been included in the corrected affidavit.  He argues that "[i]t defies logic to postulate that Soberick with the intent to accept a bribe, would follow Department regulations by placing the money in an evidence box, immediately inform the Chief of Police, follow the instructions of the Assistant District Attorney/Borough Solicitor, have the 'bribe' discussed at a public meeting of the Borough Council, and have that governing body of the Borough accept the funds upon the advice and consent of the Solicitor/Assistant District Attorney."  (Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 90) at 8).  The court finds that the affidavit contains probable cause to arrest the plaintiff even when this information about plaintiff's handling of the money is added.  According to the affidavit, the purpose of obtaining the funds from Zurn was to purchase weapons for the department.  A judge examining the additional information that plaintiff took steps to record the source of the cash and have the city acknowledge the receipt could still reasonably find that probable cause to arrest the plaintiff existed.  Indeed, a

16

magistrate could conclude that plaintiff by contacting the Borough and the Borough

Police Chief had taken steps to legitimize the arrival of the money in the

Department's coffers.  Laundering money in that fashion, the judge could find, is

evidence of an attempt to conceal public corruption, not grounds for denying a

warrant.

The court thus finds that none of the evidence, if added to the affidavit of

probable cause, would cause a magistrate to deny a warrant.  Taken together, that

additional evidence does not change the uncontradicted statements in the affidavit

that plaintiff was on the scene when police stopped Zurn, that witnesses reported

that plaintiff had allowed Zurn to leave the scene despite his suspected intoxication

and had suggested to Zurn departmental equipment needs that he could fill, and that

plaintiff had possession and control of the money implicated in the bribery scheme.

Adding to those facts that plaintiff was not in charge of the DUI checkpoint, that he

did not receive the money directly from Zurn, and that he processed that money

according to the Borough's rules does not eliminate the probable cause stated in the

affidavit.  Accordingly, the court will grant the defendant's motion for summary

judgment.  This decision disposes of the case, and the court will not consider

defendant's claim of qualified immunity.[4]

---

[4]At oral argument, plaintiff's counsel contended that Moran also made false statements in his affidavit.  Counsel did not make this argument in his brief.  Even if he had, the court would not find that materially false statements existed in the affidavit. According to the plaintiff, the affidavit falsely contends that plaintiff was the "ranking officer at the scene" of the initial DUI request.  (See Affidavit of Probable Cause (Doc. 84-2) at ¶

**Conclusion**

For the reasons stated above, the court will grant Defendant Moran's motion for summary judgment.  An appropriate order follows.

---

6).  In plaintiff's answer to defendant's statement of facts for his motion, plaintiff asserts that "[i]t is specifically Denied that Officer Soberick was the ranking police officer from Lansford at the DUI checkpoint.  In fact, Officer Soberick was not even specifically assigned to the checkpoint.  He was the ranking officer on duty for the entire Borough of Lansford, and was responsible for handling calls and patrols throughout the Borough." (Plaintiff's Statement at ¶ 11).  Plaintiff appears to contend that this statement was false or made in reckless disregard for the truth.  The court finds that this statement was not necessarily untrue.  Plaintiff himself admits that he was the "ranking officer" from the Lansford Police on duty on the night in question, though he was not assigned to the DUI checkpoint.  A reasonable person making out an affidavit might conclude that since plaintiff was the department's "ranking officer," he was the "ranking officer" on the scene when he arrived at the DUI checkpoint.  In any case, this alleged factual consistency is not material to the probable cause contained in the warrant.  Plaintiff admits he was at the scene of the DUI checkpoint when Zurn arrived.  Since probable cause was based, in part, on plaintiff's presence on the scene, not his rank at the time, that rank is immaterial to the probable cause contained in the affidavit.   No liability could therefore attach to the defendant for this statement.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACK SOBERICK,** | : | **No. 3:04cv1738** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF LANSFORD,** | : | |
| **JAMES STRAUSS, MAYOR GEORGE** | : | |
| **KRAJNAK, POLICE OFFICER** | : | |
| **JEREMY SOMMERS, ROBERT** | : | |
| **GAUGHAN, RICHARD GIANTESANO,** | : | |
| **CHARLES REPINEC, MARGARET** | : | |
| **HOROWSKI, BARRY MORAN,** | : | |
| **and JOSEPH NIHEN,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 15th day of September 2008, Defendant Barry Moran's

motion for summary judgment (Doc. 82) is hereby **GRANTED**.  As the court has

been notified that the case has been settled between all of the other parties, the

Clerk of Court is directed to **CLOSE** the case.


**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**